**ALI BABA CO., INC., Appellant,**

v.

**WILCO, INC., et al., Appellees.**

No. 83–793.

District of Columbia Court of Appeals.

Argued June 7, 1984.

Decided Oct. 10, 1984.

Rex K. Nelson, Washington, D.C., for appellant.

Bernard A. Gray, Sr., Washington, D.C., for appellees.

Before FERREN and ROGERS, Associate Judges, and REILLY, Chief Judge, Retired.

ROGERS, Associate Judge:

Appellant contends that the trial court erred in ruling that appellees were not collaterally estopped from raising the same defenses in this suit to collect a deficiency on a note as they had raised in a prior landlord and tenant action for possession in which summary judgment was granted against appellees after they had interposed a plea of title. We agree that appellant can properly assert a claim of nonmutual offensive collateral estoppel. Accordingly, we reverse the judgment for appellees and remand this case to the trial court with instructions to enter a judgment for appellant.[1]

---

1. Since we hold appellees were collaterally estopped, we do not need to address appellant's other claims of error: that the trial court erred in submitting the issue of wrongful substitution to the jury since it was an equitable question to be determined by the judge; that the trial court's order did not reflect what the jury had found; and that there was no evidence to warrant submission to the jury of the question of wrongful substitution of trustees on the note since the appellees failed to contradict plaintiff's evidence that the substitution was for good cause.

## I.

This litigation arises out of the purchase by appellees (WILCO) on September 14, 1978, of 2014 Rhode Island Avenue, N.E., a commercial property. To finance the purchase, WILCO, Inc., with Mr. and Mrs. Wilson as personal guarantors (as president and secretary of the corporation and individually), executed three deeds of trust and trust notes: the first for $37,000, the second for $10,300, and the third for $5,000. The purchaser of the second trust note, Edgar M. Levy, seeks through appellant (Ali Baba) to collect the amount of the deficiency left on the note after the foreclosure and sale of the property.

Ali Baba filed a complaint against WILCO on November 16, 1979, seeking $6863.77 plus interest and costs (including $604.55 in foreclosure costs), and attorneys fees and suit costs. The complaint alleged that WILCO had defaulted in its payments on the note and, pursuant to lawful notice, the trustees had foreclosed and sold the premises on June 5, 1979, for $2500, subject to the first trust. In its answer, WILCO claimed that Ali Baba was the alter ego of the lender and/or Edgar M. Levy, who had wrongfully substituted trustees on the note, and that it did not owe the deficiency judgment. WILCO sought recoupment of all interest paid, asserting that the interest on the note violated the usury laws (D.C. Code § 28–3301 (1973 ed.), and the loan contract was void because Ali Baba had failed to comply with money lending laws (5Q D.C.R.R. § 1.1, et seq. (1970) and D.C. Code § 26–601, et seq. (1973 ed.)). WILCO also filed a counterclaim for a money judgment for wrongful foreclosure equal to all the sums paid on the contract, and demanded a jury trial. Ali Baba answered the counterclaim, asserting the inapplicability of the usury laws and denying that it was

engaged in the business of lending money in the District of Columbia and that WILCO was entitled to recoupment or any other relief.[2]

On September 28, 1982, with leave of court, Ali Baba amended its answer to the counterclaim to raise the issues of res judicata and collateral estoppel as a result of two previously litigated and judicially determined cases: *Aladdin v. WILCO*, L & T 85085–79 (for possession of the Rhode Island Avenue property) and *WILCO v. Aladdin*, Civil Action 7136–79 (for a temporary restraining order to halt the foreclosure sale of the Rhode Island Avenue property). The trial court ruled that the prior litigation did not have res judicata or collateral estoppel effect on WILCO's counterclaim. A jury returned a verdict for WILCO on May 10, 1983, and by order of May 15, 1983, the trial court ruled that the jury had found that Ali Baba had wrongfully substituted trustees on the deed of trust and that the trustees had breached their duty to WILCO. In the order, the court also dismissed the complaint with prejudice, and set aside the foreclosure sale of the Rhode Island Avenue property.

Ali Baba filed a motion for judgment notwithstanding the verdict, Super.Ct. Civ.R. 50, on the ground that WILCO was collaterally estopped to relitigate the issue of substitution of trustees in the instant case since that issue was litigated in the prior *Aladdin* lawsuit against WILCO for possession of the Rhode Island Avenue property (L & T No. 85085–79).[3] Ali Baba argued that the answer and plea of title by WILCO in the *Aladdin* lawsuit had raised four defenses (wrongful substitution of trustees, inadequate foreclosure price, usurious loan and unlicensed lending), and caused the case to be certified to the Assignment Commissioner for trial by jury, in

---

**2.** Ali Baba also filed a motion for summary judgment which was denied on January 14, 1982. The pretrial statement approved by the trial court on April 12, 1982, stated that Ali Baba was the assignee of the note.

**3.** Ali Baba also asserted there was no evidence to support the jury's verdict that the trustee substitution was wrongful, and argued that the issue of wrongful substitution of trustees was a question of law for the court and not one of fact for the jury, citing *Johnson v. Inter-City Mortgage Corp.*, 366 A.2d 435, 437 (D.C.1976).

accordance with L & T Rule 5(c),[4] on December 11, 1979. Thereafter, on February 14, 1980, Aladdin filed a motion for summary judgment, which was granted after a hearing on March 14, 1980, by the judge sitting in the Landlord and Tenant Branch, and that judgment was, Ali Baba argued, binding and final since WILCO did not appeal it. WILCO filed an opposition, contending that the *Aladdin* judgment was a final determination only on the issue of possession because the case was never certified to the Civil Division for trial pursuant to L & T Rule 5(c); rather it was inadvertently sent to the Civil Assignment Office under L & T Rule 6[5] for the purpose of handling the jury trial demand, and thus the Civil Division never gained jurisdiction and the judge sitting in the Landlord and Tenant Branch lacked jurisdiction over plea of title. The trial court denied the motion.

## II.

The general rule of collateral estoppel[6] is stated in the RESTATEMENT (SECOND) OF JUDGMENTS § 27:

When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.[7]

Offensive use of collateral estoppel arises when a plaintiff seeks to estop a defendant from relitigating the issues which the defendant previously litigated and lost

---

4. L & T Rule 5(c) provides:

(c) PLEA OF TITLE. A defendant desiring to interpose a plea of title must file such a plea in writing, under oath, accompanied by a certification that it is filed in good faith and not for the purpose of delay and must also file an application for an undertaking or for waiver of undertaking, the form and amount of any such undertaking to be approved by the court. Upon such approval by the court, the undertaking shall be filed within four days thereafter and the case shall be certified to the Civil Division for trial on an expedited basis. Upon failure to so file the undertaking, the clerk shall strike the plea of title unless the court for good cause shown shall extend the time within which the undertaking may be filed.

5. L & T Rule 6 provides:

JURY DEMAND. Any party entitled to a jury trial may demand a trial by jury of any action brought in this branch by filing a demand for such jury trial signed by the party or his attorney of record. The demand must be filed not later than the time for appearance of the defendant stated in the summons, or such extended time as the court may allow for good cause shown, and must be accompanied by (1) the fee provided in Superior Court Rule of Civil Procedure 202, unless the court has authorized the party to proceed without payment or prepayment of costs, and (2) a verified answer setting out the facts upon which the defense is based, if the jury demand is made by the defendant. If a trial by jury is properly demanded, the case will be certified to the Civil Assignment Office and scheduled for trial on an expedited basis.

6. See also the elements of collateral estoppel stated in 1B MOORE'S FEDERAL PRACTICE ¶ 0.443[1] (2d ed. 1982) as follows:

The issue to be concluded must be the same as that involved in the prior action. In the prior action, the issue must have been raised and litigated, and actually adjudged. The issue must have been material and relevant to the disposition of the prior action. The determination made of the issue in the prior action must have been necessary and essential to the resulting judgment.

(Footnote omitted) *quoted in Goldkind v. Snider Bros., Inc.,* 467 A.2d 468, 473 (D.C.1983).

7. Historically, nonmutual collateral estoppel was not permitted. Under the mutuality doctrine, neither party could use a prior judgment as an estoppel against the other unless both parties were bound by the judgment. *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 326–27, 99 S.Ct. 645, 649–50, 58 L.Ed.2d 552 (1979). The theory was that one party should not be able to bind another party by a prior judgment by which it would not itself be bound. However, in *Blonder-Tongue Laboratories v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), the Supreme Court specifically overruled the mutuality requirement. State courts had earlier begun to liberalize the application of collateral estoppel by abandoning the mutuality requirement. See *Bernhard v. Bank of America,* 19 Cal.2d 807, 122 P.2d 892, 894 (1942) and cases cited therein; 112 A.L.R. 401. *See Jackson v. District of Columbia,* 412 A.2d 948, 952–53 (D.C.1980) (nonmutual defensive use of collateral estoppel allowed).

against another plaintiff.[8] *Parkland Hosiery Co., Inc. v. Shore, supra* note 7, 439 U.S. at 329, 99 S.Ct. at 650. An issue is actually litigated when it "is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined.... An issue may be submitted and determined on a motion to dismiss for failure to state a claim, a motion for judgment on the pleadings, a motion for summary judgment (see Illustration 10), ... or their equivalents...." RESTATEMENT (SECOND) OF JUDGMENTS § 27(d).

■ Our review of the record indicates that the defenses which WILCO raised in its plea of title and litigated in the *Aladdin* case are the same defenses raised in the instant suit. Because the doctrine of offensive collateral estoppel presents issues relating to the potential unfairness to a defendant, and since a non-party to the first action is raising the claim, we endorse the approach enunciated by the Supreme Court in *Parklane.* There the Court concluded that "the preferable approach for dealing with these problems in federal courts is not to preclude the use of offensive collateral estoppel, but to grant trial courts broad discretion to determine when it should be applied." *Parklane Hosiery Co. v. Shore, supra* note 7, 439 U.S. at 331, 99 S.Ct. at 651. *See Ross v. Lawson*, 395 A.2d 54, 56–57 (D.C.1978) (collateral estoppel may be applied offensively against a defendant in a civil suit for assault where the defendant has previously been convicted of assault in a criminal trial).

The trial court in the instant case ruled that the prior summary judgment granted in favor of Aladdin and against WILCO did not have collateral estoppel effect because the issues contested in defense had never been actually presented to a trier of fact and the order in that case was confined to a determination of entitlement to possession as between Aladdin and WILCO.[9] The trial court erred insofar as its ruling was premised on the legal conclusion that the prior summary judgment was not a decision on the merits.

> A summary judgment, of course, is a decision on the merits of the case. Thus, a Rule 56 motion will be granted on the basis of former adjudication when an earlier summary judgment has disposed of the same issues between sufficiently related parties.

10A C. WRIGHT, A. MILLER & M. KANE, FEDERAL PRACTICE & PROCEDURE: Civil 2d § 2735 (2d ed. 1983); *see also, Jackson v. District of Columbia, supra* note 7, 412 A.2d 948 (collateral estoppel applied to preclude plaintiffs from relitigating issues raised in prior suit which ended in summary judgment granted against them). However, a remand is unnecessary since there is sufficient evidence in the record for us to make the determination. We agree with the analysis of the doctrine of collateral estoppel described by the Supreme Court in *Parklane,* and as explicated further herein hold, upon a review of the record, that there is no reason not to allow collateral estoppel to apply. *See Parklane Hosiery Co., Inc. v. Shore, supra* note 7, 439 U.S.

8. Collateral estoppel is distinct from the doctrine of res judicata which applies when the parties are the same and the essence of the claim and evidence necessary to establish it are the same. *Henderson v. Snider Bros., Inc.,* 439 A.2d 481, 484–85 (D.C.1981) (en banc). Under the doctrine of res judicata, a party is estopped from relitigating any claim which could have been raised in the prior action, whether or not it was actually raised. *Id.* at 485.

9. The trial judge also ruled that the judgment was not final because of the pendency of a motion to vacate and, therefore, declined to give it collateral estoppel effect. The motion to va-

cate was filed 30 days after the entry of the summary judgment. The judge therefore erred in ruling that the judgment was not final since a motion to vacate filed more than 10 days after the judgment does not affect its finality. *Compare Coleman v. Lee Washington Hauling Co.,* 388 A.2d 44, 47 (D.C.1978) (Super.Ct.Civ.R. 59 motion filed within 10 days of judgment tolls the time for appeal) *with Smith v. Canada,* 305 A.2d 521, 522 (D.C.1973) (Super.Ct.Civ.R. 60(b) motion does not toll the time for notice of appeal); *see* Super.Ct.Civ.R. 60(b) (motion under this rule does not affect the finality of judgments).

at 331–32, 99 S.Ct. at 651–52 ("In the present case, however, none of the circumstances that might justify reluctance to allow the offensive use of collateral estoppel is present"); *Goldkind v. Snider Bros., Inc., supra* note 6, 467 A.2d 468.

■ As enunciated in *Parklane,* the factors to be applied as a matter of law by the trial court require it to determine whether it would be fair to apply the doctrine against the defendant and whether the defendant had a full and fair opportunity to litigate the issue. These factors are:

(1) whether the first suit was for a trivial amount while the second was for a large amount;

(2) whether the party asserting the estoppel could have effected joinder between himself and his present adversary, but did not do so;

(3) whether the estoppel is based on one of conflicting judgments, another of which is in defendant's favor;

(4) whether there are significantly different procedural advantages available to the defendant in the second suit which could affect the outcome.

1B MOORE'S FEDERAL PRACTICE, *supra* ¶ 0.441[3.–4]; *Parklane Hosiery, supra* note 7, 439 U.S. at 329–31, 99 S.Ct. at 650–52. Only the fourth factor requires

more than brief comment in the context of this case.

The first factor poses no problem. While the *Aladdin* and *Ali Baba* lawsuits were for different remedies (for possession of the premises in *Aladdin,* for money due on a note in *Ali Baba* ), we find no basis to conclude that WILCO had less of an incentive to litigate the possessory action than it did to litigate the instant case. The record reveals that WILCO vigorously opposed the foreclosure, even seeking a temporary restraining order to prevent the sale of the business.[10] Furthermore, WILCO's plea of title and refusal to vacate the premises after the foreclosure indicated that possession of the building and maintenance of the ongoing business were very important to it.[11] The testimony of the president of WILCO in the instant case, as well as WILCO's pleadings in this and the *Aladdin* case, is consistent only with the conclusion that WILCO had at least the same interest in vigorously defending the possession suit as it had in defending the money suit.[12]

■ The second factor also does not present an obstacle to application of collateral estoppel in this case. WILCO asserted that Ali Baba, Aladdin Associates and Edgar M. Levy were one and the same, and thus, in effect, already in the case.[13] But

---

**10.** WILCO obtained the temporary restraining order one and one-half hours after the foreclosure had taken place.

**11.** WILCO had leased the Rhode Island Avenue property for five years and had a dry cleaning business at the time the lessor decided to sell the property.

**12.** Nor does the record indicate that collateral estoppel should not apply because, as a result of this adversary's conduct or other special circumstances, the party sought to be precluded did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the first action. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 28(5)(c). Although WILCO was at one time represented by an attorney (Mr. Roxboro), who Mr. Wilson testified was also working for Mr. Levy (and against whom he has filed a complaint with the grievance committee and a lawsuit), WILCO retained new counsel before the foreclosure (who filed a petition for a temporary restraining order to stop the foreclosure)

and thus before Aladdin filed its suit for possession. The record also indicates that while WILCO was apparently having problems retaining counsel in the *Aladdin* case, it was represented during that litigation by two attorneys who were unrelated to Ali Baba or Aladdin, and filed appropriate pleadings on WILCO's behalf; the first attorney represented WILCO until the case was ready for trial, and the second represented WILCO at the hearing on the motion for summary judgment and thereafter filed several pleadings, including a motion for a temporary restraining order to stop removal of equipment from the Rhode Island Avenue property, which was granted, and a motion to vacate the *Aladdin* judgment.

**13.** Ali Baba Co., Inc. and Aladdin Associates were incorporated in 1974 and have the same officers and directors (Edgar M. Levy, Sofie Levy, and Hazel Bomes). According to annual reports, the corporations' business consists of buying, selling, trading, exchanging and dealing

this aside, the "wait and see" posture, where a party delays instigating an action until the resolution of the first suit filed, hoping that it will be for the plaintiff and thereby allow him to plead collateral estoppel, should not preclude the application of collateral estoppel in the instant case. Ali Baba filed its lawsuit on November 16, 1979, two days after a default had been entered against WILCO in the *Aladdin* case. Counsel for WILCO entered an appearance on November 19 in the *Aladdin* case and obtained a stay in order to file a motion to set aside the default; this was timely done and the default was set aside on December 11, 1979. Thus, Ali Baba's "wait and see" tactics, if any, effectively came to naught.

The third factor is inapplicable since it refers to a situation in which a defendant is sued seriatim by a number of plaintiffs, successfully defends the first suits, then loses one, and the remaining plaintiffs seek to use the lone judgment against the defendant as an estoppel in the remaining suits. 1B MOORE'S FEDERAL PRACTICE, *supra*, ¶ 0.441[.3–4] n. 5.

■ The fourth factor also should not preclude estoppel. We reach this conclusion after taking into account another consideration which the RESTATEMENT (SECOND) OF JUDGMENTS § 29 suggests is appropriate to consider with the fourth *Parklane* factor.[14] That consideration is whether treating the issue as conclusively determined would be incompatible with an applicable scheme of administering the remedies in the actions involved.[15] Thus, when a prior lawsuit in the Landlord and Tenant Branch

is strictly for possession and there is a subsequent lawsuit based on another cause of action between the parties arising out of the landlord and tenant relationship, the first suit might not have full collateral estoppel effect. *See Atkins v. United States*, 283 A.2d 204, 205 n. 2 (D.C.1971) (certain issues litigated in suit for possession finally determined between the parties); *Brown v. Southall Realty Co.*, 237 A.2d 834, 835 (D.C.1968) (same); *Tutt v. Doby*, 148 U.S.App.D.C. 171, 459 F.2d 1195 (1972) (no collateral estoppel effect given to default judgment obtained by landlord for possession without personal service in second suit for amount of rent due). The rationale in the ordinary case is that the procedural protections available in the summary proceedings are substantially curtailed and the issues between landlords and tenants which are handled in the Landlord & Tenant Branch are limited and handled in an expeditious manner. *Davis v. Rental Associates, Inc.*, 456 A.2d 820, 822–23 (D.C. 1983) (en banc); *Lindsey v. Normet*, 405 U.S. 56, 64, 92 S.Ct. 862, 869, 31 L.Ed.2d 36 (1972) (upholding constitutionality of Oregon statute establishing special procedures for landlord and tenant litigation).

WILCO's plea of title afforded it the opportunity to remove the *Aladdin* case from the ordinary procedures in the Landlord and Tenant Branch. Super.Ct. L & T R. 5(c) provides that after the filing of a written plea of title, upon approval of the undertaking, "the case shall be certified to the Civil Division for trial on an expedited basis." Aladdin's motion for summary judgment was filed almost two months after WILCO filed its plea of title, and bond

---

in real property and chattels. Ali Baba also deals in chattels, and Aladdin engages in managing and renovating real property. We find nothing in the record to indicate that we should disregard the separate and distinct nature of each corporation. *See Harris v. Wagshal*, 343 A.2d 283, 287 (D.C.1975).

**14.** The RESTATEMENT (SECOND) OF JUDGMENTS suggests three other considerations which do not apply to the facts before us.

**15.** *See* RESTATEMENT (SECOND) OF JUDGMENTS § 28(3) (collateral estoppel should not apply when a new determination of the issue is warranted by differences in the quality and extensiveness of the procedures followed in the two courts or by

was waived.[16] Thus, pursuant to Rule 5(c), the available procedures in the *Aladdin* and *Ali Baba* cases were identical since both were subject to the Superior Court Rules of Civil Procedure. Furthermore, the scheme of administering the remedies in the Landlord and Tenant Branch is, by its own rules, to be altered once a defendant interposes a plea of title. Therefore, treating the issue of title as conclusively determined in the *Aladdin* case would not be compatible with such a scheme.

WILCO contends, however, that it did not, in fact, receive the benefit of the full procedures of the Civil Division because the case was never certified there and Aladdin's motion for summary judgment was heard on an expedited basis by a judge sitting in the Landlord and Tenant Branch. Instead of having several months to prepare an opposition (as a result of calendaring delays in the Civil Division), WILCO complains it was subjected to the expedited calendaring procedures of the Landlord and Tenant Branch and, hence, had only one month to prepare before the motion for summary judgment was heard. WILCO also contends, citing *Tutt v. Doby, supra,* 148 U.S.App.D.C. at 174, 459 F.2d at 1198, that the judge sitting in the Landlord and Tenant Branch lacked jurisdiction to rule on the plea of title and the order of the court is, consequently, limited to a determination of the rights of possession as between Aladdin and WILCO.

■ We find these contentions unpersuasive. WILCO interposed the plea of title and is deemed, through its attorney, to know the rules of the Superior Court. *Graves v. Nationwide Mutual Insurance Co.,* 151 A.2d 258, 261 (D.C.1959). Any objections to a judge sitting in the Landlord and Tenant Branch handling the matter

after the plea of title should first have been raised in the trial court and then on appeal. Assuming the *Aladdin* lawsuit was not certified to the Civil Division in accordance with Rule 5(c), WILCO had the opportunity to object to further proceedings in the Landlord and Tenant Branch, but the record fails to indicate that WILCO called the matter to the attention of the clerk's office or to the attention of the judge sitting in the Landlord and Tenant Branch. Further, while the order granting summary judgment to Aladdin was entered in the landlord and tenant case, the summary judgment rule in the Landlord and Tenant Branch is the same as that in the Civil Division. L & T R. 13(b) (Super.Ct.Civ.R. 56 applies to summary judgment proceedings in the Landlord and Tenant Branch). WILCO appeared at the hearing on the motion for summary judgment with counsel and had an opportunity to argue the merits or to ask for a continuance or to seek reconsideration; WILCO does not contend that it either requested a continuance or otherwise objected to the hearing on the merits. Finally, even if the motion was improperly heard in the Landlord and Tenant Branch, WILCO did not appeal the adverse judgment by the judge sitting in the Landlord and Tenant Branch, although it could have, and that judgment has become final. *See Henderson v. Snider Bros., supra* note 8, 439 A.2d at 484 (court noted that there was no appeal from the adverse ruling in the prior case).[17]

■ WILCO's jurisdictional argument is without merit. The District of Columbia Court Reform and Criminal Procedure Act (Pub.L. 91–358, 84 Stat. 473 (1970)) vests the Superior Court with jurisdiction over civil actions at law or in equity in the District of Columbia. D.C.Code § 11–921 (1981). *Andrade v. Jackson,* 401 A.2d 990,

factors relating to the allocation of jurisdiction between them).

16. Aladdin's motion for a protective order requiring WILCO to make security payments had been granted on November 29, 1979, and WILCO had been making monthly payments into the court registry.

17. *Compare* RESTATEMENT (SECOND) OF JUDGMENTS § 28(1) (collateral estoppel ought not to be applied when party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action).

992–93 (D.C.1979) (the functional divisions of the Superior Court "do not delimit their power as tribunals of the Superior Court with general jurisdiction to adjudicate civil claims and disputes"). Pursuant to D.C. Code § 11–902 (1981), the Superior Court has established the rules for the Landlord and Tenant Branch (Order February 1, 1971), and orderly procedures require issues to be decided by the division or branch designated by the rules with the responsibility for those matters. But there is no jurisdictional limitation prohibiting one division or branch from considering matters more appropriately considered in another, and dismissal of an action is proper only where none of the divisions possess a statutory basis for the assertion of jurisdiction. *Id.* at 994.

Accordingly, we conclude that the issues actually litigated and finally determined in the *Aladdin* lawsuit are dispositive of the issues in the instant case, and reverse the judgment below. Upon remand, the trial court shall enter judgment for appellant following a determination of the amount due.[18]

Reversed and remanded with instructions.

18. The complaint alleged that as of April 11, 1979, a balance of $9263.77 plus interest and charges was due.