BRANDENBURGER & DAVIS,
INC., Appellant,

v.

ESTATE OF Lossie Mae LEWIS,
et al., Appellees.

No. 00–PR–31.

District of Columbia Court of Appeals.

Argued Jan. 31, 2001.
Decided April 5, 2001.

Daniel J. Doherty III, Crofton, MD, for appellant.

Karl W. Carter, Jr., Mount Rainier, MD, for appellees.

Before TERRY and WASHINGTON, Associate Judges, and KING, Senior Judge.

KING, Senior Judge:

Brandenburger & Davis, Inc. ("Brandenburger") appeals the trial court's dismissal of its complaint, filed in the Probate Division of the Superior Court, seeking acknowledgment of, and payments pursuant to, assignment agreements with three recognized heirs and one unrecognized potential heir of the estate of Lossie Mae Lewis ("Estate"). We conclude that the assignment agreements confer standing upon Brandenburger to assert all of its claims in the Probate Division. Accordingly, we reverse and remand.

## I.

Brandenburger is an "heir hunter" corporation that locates previously undiscovered heirs and attempts to secure a partial assignment of their estate interests in exchange for providing them with specific information about their potential estate recovery. Appellees include the Estate, several heirs recognized by the Estate, and Freddie B. Lewis ("Freddie Lewis"), a potential heir who has not been recognized by the Estate.

Approximately two weeks after Ms. Lewis' death,[1] two of her sisters filed a petition for probate listing themselves as the sole heirs and "Interested persons" in her estate. Subsequently, Brandenburger researched Ms. Lewis' lineage and located other potential heirs. The issues in this case concern four of these previously undiscovered heirs—Freddie Lewis, Norman D. Lewis, Jr. ("Norman Lewis"), Dorothy M. Howard, and Shirley A. Sampson.

Brandenburger offered to reveal specific information about the Estate to each of the four individuals in exchange for an assignment of twenty-five percent of the value of the Estate property to which each would be entitled.[2] All four agreed. Three as-

---

1. Ms. Lewis died intestate on February 7, 1994.

2. In relevant part, the assignments provide:

In consideration of your having located me and having brought to my attention certain assets in which I may have an interest, derived from the estate of Lossie Mae Lewis and in consideration of your further time, effort, expertise, and expense in investigating and your endeavor to gather genealogical evidence in support of my claim, I hereby assign to you a one-fourth interest in such assets to which I may be found entitled.

It is understood that the share assigned to you is to cover all costs and expenses you may incur in connection with efforts to establish

signments were executed in Ohio and one was executed in California.[3] On March 23, 1994, the four heirs entered a formal appearance in the probate proceeding. Since that date, Norman Lewis, Howard, and Sampson have been recognized as heirs by the Estate. The Estate has declined, however, to recognize Freddie Lewis as an heir. Other than her initial appearance, Freddie Lewis has not pressed her claim or made any other appearances.

On or about December 12, 1997, the Estate made a partial asset distribution to the recognized heirs in the amount of $1,500.00.[4] Brandenburger, however, did not receive any payment. On May 21, 1998, Brandenburger filed a complaint in the Probate Division of the Superior Court seeking monies from the December 12, 1997, distribution as well as recognition of its entitlement to any other distribution of the Estate, past or future, as a result of its assignment agreements.

During a pre-trial conference, the trial court ruled that the Estate did not have to recognize Brandenburger's assignment agreements with the heirs because the Estate was not a party to them.[5] Implicit in that ruling was the determination by the trial court that, despite the assignments, Brandenburger was not an "Interested person" under the District of Columbia's probate law. The trial court stated that Brandenburger "must seek its remedy against the subject heirs in a collection action filed in the Civil Division of this Court or a Court having jurisdiction [but

not the Probate Division] over the alleged parties." Moreover, the trial court held that Brandenburger lacked standing to establish Freddie Lewis' status as an heir of the Estate.

On appeal, Brandenburger argues first that its assignment agreements with Norman Lewis, Howard, and Sampson, the three heirs recognized by the Estate, should confer upon it the same rights possessed by them. Since these recognized heirs are "Interested persons" under D.C.Code § 20–101(d)(1) (1997), Brandenburger contends that it should also, as an assignee, be accorded that status for the purpose of presenting its claims to the Probate Division. Second, Brandenburger asserts that its status as an assignee should likewise permit it to present proof of Freddie Lewis' heirship. For the reasons stated below, we agree with Brandenburger on both points.

## II.

■ While we will separately address the issues concerning the three recognized heirs and those concerning Freddie Lewis, it is necessary to resolve initially an issue common to all of the assignments, namely, whether Brandenburger should be deemed an "Interested person" under the District of Columbia's probate code. In relevant part, an "Interested person" is defined as:

(A) any person named in the will to serve as personal representative, until the appointment of a personal represen-

---

my entitlement. I AM TO HAVE ABSOLUTELY NO PERSONAL RESPONSIBILITY TO YOU FOR ANY COSTS OR EXPENSES OF ANY KIND WHICH MAY BE INCURRED BY YOU.

In the event no recovery can be effected, I will be under absolutely no financial obligation to Brandenburger & Davis by virtue of having signed this agreement.

3. Norman Lewis' assignment was executed in California.

4. According to the fourth accounting, filed on August 27, 1997, the Estate's assets totaled $684,136.50, of which $504,848.83 remained undistributed.

5. While there is a transcript of this oral ruling, the trial court also issued a written order summarizing its decision on December 14, 1999.

tative; (B) a personal representative; (C) any legatee in being, whether such legatee's interest is vested or contingent, until the legacy is paid in full; (D) *an heir*, except that an heir ceases to be an interested person once a will has been admitted to probate; provided, that, an heir is an interested person for the purpose of any proceeding to contest the validity of the will and following any determination that the decedent died intestate as to some or all of the estate; and (E) any creditor of the decedent, including those persons whose rights accrue at the time of death, who has timely presented a claim in excess of $500 that has not been barred or discharged. D.C.Code § 20–101(d)(1) (1997) (emphasis added). Because Brandenburger cannot independently satisfy this definition,[6] it can only be considered an "Interested person" if it may legally stand in the shoes of an "Interested person" as defined by the statute. Of the four possibilities under § 20–101(d)(1), only subparagraph (D), which confers "Interested person" status on "an heir," could apply in these circumstances. Consequently, in order to attain "Interested person" status, Brandenburger must establish that it stands in the shoes of "an heir." *See* D.C.Code § 20–101(d)(1)(D). Section 20–101(c) defines an heir as "a person entitled to property of an intestate decedent pursuant to chapter 3 of title 19." D.C.Code § 20–101(c); *see* D.C.Code §§ 19–301 to –321.[7] Because three of the assignors have been recognized by the Estate as heirs and since none of the exceptions outlined in § 20–101(d)(1)(D) is applicable,[8] Norman Lewis, Howard, and Sampson are "Interested persons" in the Estate under our probate code.

■ Freddie Lewis' situation, of course, is different because the Estate has not yet recognized her as an heir. A claimant, however, must be able to establish its status as an heir and "Interested person" in a probate proceeding before it has been "officially" recognized as such. *See In re Estate of Barfield,* 736 A.2d 991, 996–97 (D.C.1999) (upholding probate court's dismissal of a complaint for lack of standing because claimant offered little, if any, evidentiary or factual support for his contention that he was an "Interested person" after being given an opportunity to do so). Furthermore, Super. Ct. Prob. R. 120,[9] *infra*, expressly permits an assignee of "a party who claims to have a right to share as an heir" to protect or enforce the assignment. It defies reason to allow an assignee to intercede into a judicial proceeding, but not permit the original party in interest, the assignor, to do so. There-

6. In this situation, Brandenburger, on its own, is not: (1) a personal representative, *see* D.C.Code § 20–101(d)(1)(A–B); (2) a legatee in being, *see* § 20–101(d)(1)(C); (3) an heir, *see* § 20–101(d)(1)(D); or (4) a creditor of the decedent, *see* § 20–101(d)(1)(E).

7. Chapter 3 of title 19 predominantly addresses the estate entitlements of various blood relatives of an intestate decedent, including surviving spouses, *see* D.C.Code §§ 19–302, –303, –304, –305 (1997), children, *see* § 19–306, grandchildren, *see* § 19–307, fathers and mothers, *see* § 19–308, brothers and sisters or their descendants, *see* §§ 19–309, –310, collateral relations, *see* § 19–311, grandfathers and grandmothers, *see* § 19–312, posthumous children, *see* § 19–314, and children born out of wedlock, *see* § 19–316.

8. All of the limitations and contingencies placed on the "Interested person" status of heirs in § 20–101(d)(1)(D) apply only to estate proceedings involving a will. It is undisputed that the decedent in this case died intestate.

9. Rule 120 pertains to estates involving those who died between January 1, 1981, and June 30, 1995, and is the controlling assignment rule in this case because Lossie Mae Lewis died on February 7, 1994. Rule 420, which is substantially similar, applies to estates involving those who died on or after July 1, 1995.

fore, to the extent it is necessary to provide an opportunity to establish her entitlement to Estate proceeds, Freddie Lewis should be considered as a putative "Interested person."

A determination that these assignors are "Interested persons" (or in the case of Freddie Lewis a putative "Interested person"), however, does not end our inquiry. We must next determine whether, as a result of its assignments, Brandenburger should be considered an "Interested person." Brandenburger argues that the law in this jurisdiction "favoring" assignments requires that it should. We agree.

■ "District of Columbia law evinces a policy of free assignability of claims." *Antal's Rest., Inc. v. Lumbermen's Mut. Cas. Co.*, 680 A.2d 1386, 1388 (D.C.1996) (quoting *National Union Fire Ins. Co. v. Riggs Nat'l Bank*, 646 A.2d 966, 971 (D.C.1994) (citations omitted)). As we have previously observed:

> In general, all contractual rights may be assigned, including the right to sue for enforcement of a claim. The right to assign is presumed, based upon principles of unhampered transferability of property rights and of business convenience. The effectiveness of an assignment does not normally depend upon the consent of the obligor unless the rights to be assigned involve the performance of unique personal services.

*Flack v. Laster*, 417 A.2d 393, 399 (D.C. 1980) (footnotes omitted); *see Antal's, supra*, 680 A.2d at 1388; *Peterson v. District of Columbia Lottery & Charitable Games Control Bd.*, 673 A.2d 664, 667 (D.C.1996). Our judicial preference for free assignability is such that "[u]nless a contract contains 'clear, unambiguous language' prohibiting an assignment, [we will not] honor attempts to restrict the right to assign freely." *Peterson, supra*, 673 A.2d at 667 (quoting *Flack, supra*, 417 A.2d at 399).

■ Moreover, it has long been recognized that an assignee may pursue legal action predicated on rights arising from an assignment. *See, e.g.*, D.C.Code § 28–2102 (1996) (assignment for benefit of creditor vests in assignee title to all of debtor's property contemplated by assignment); § 28–2301 (assignee of a judgment or money decree "may maintain an action [thereon] ... in his own name"); § 28–2302 (assignee of a bond or obligation "may maintain an action thereon in his own name"); § 28–2303 (assignee of a non-negotiable contract "may maintain an action thereon in his own name"); § 28–2304 (pursuant to a general assignment, assignee "may sue in his own name on ... several choses in action"); *National Union Fire, supra*, 646 A.2d at 971 ("[A]ssignee stands in the same position as the assignor...."); *National Union Fire Ins. Co. v. Riggs Nat'l Bank*, 303 U.S.App.D.C. 302, 304, 5 F.3d 554, 556 (1993) (characterizing the District's law on assignments as "establish[ing] the general rule that all claims are freely assignable, and permit[ting] the assignee to stand in the same position as the assignor"). Indeed, we have expressly noted that "a valid assignment confers upon the assignee standing to sue in [the] place of the assignor." *Sanders v. International Soc'y for Performance Improvement*, 740 A.2d 34, 36 (D.C. 1999) (quoting *Misic v. Building Serv. Employees Health & Welfare Trust*, 789 F.2d 1374, 1378 (9th Cir.1986)).

Finally, the rights of an assignee to stand in the shoes of an assignor are also explicitly recognized by the Superior Court's probate rules. Super. Ct. Prob. R. 120, discussed above and entitled "Assignment of rights," states:

> When a party who claims to have a right to share as an heir or [a] legatee of a deceased person assigns all or part of such right, the assignee shall promptly file the assignment in the probate pro-

ceeding. *Any further proceedings to protect or enforce the assignment, or any claim based thereon, shall be prosecuted or presented in the name of the assignee and not in the name of the assignor.* Said assignment shall be verified in accordance with D.C.Code § 20–102. Unless approved by order of this Court, counsel for the assignee shall not appear for or represent the assignor. Super. Ct. Prob. R. 120 (2000) (emphasis added); *cf.* D.C.Code §§ 28–2103, –2105 (providing a trust created by an assignment shall be supervised and controlled by a court having probate jurisdiction and that such court can, among other actions, remove an assignee and appoint a trustee in the assignee's place). Thus, consistent with the statutory and case authorities cited above, the Probate Division's own rule recognizes the right of an assignee to participate in a proceeding in the shoes of an assignor.

While we do not foreclose any challenges by the assignors to the validity of the assignments on remand,[10] we hold that each agreement, on its face, establishes Brandenburger as an assignee to the extent indicated. Thus, Brandenburger possesses, among other things, "standing to sue in [the] place of [its] assignor[s]," *Sanders, supra,* 740 A.2d at 36 (quotation omitted), a "right to sue for enforcement of ... claim[s]" arising out of the assignments, *Flack, supra,* 417 A.2d at 399, and, particularly applicable in these circumstances, the right "to protect or enforce the assignment[s]" under Super. Ct. Prob. R. 120. Accordingly, Brandenburger will be considered an "Interested person" for the purposes discussed below.

**10.** Ordinarily such challenges may only be brought by the parties to the agreements. *But cf. infra* note 11 (refusing to foreclose the ability of the Estate to examine the authenticity of the assignments or verify the identification of the assignees pursuant to *Peterson,*

### III.

With respect to the issues concerning the three recognized heirs, we understand the trial court's dismissal order to be predicated on the following two grounds: first, because the Estate was not a party to the assignment agreements, it did not need to honor them; and, second, because the Estate was not a party to the assignments and, presumably, because Brandenburger was not an "Interested person," the Civil Division, not the Probate Division, was the proper forum for the resolution of any dispute between Brandenburger and the heirs concerning monetary entitlement under the agreements. In so ruling, we conclude the trial court erred on both grounds.

Based on what we have said above, the fact that the Estate was not a party to the assignment agreements does not permit it to disregard them or to fail to give them full force and effect. To the contrary, "[t]he effectiveness of an assignment does not normally depend upon the consent of the obligor unless the rights to be assigned involve the performance of unique personal services." *Flack, supra,* 417 A.2d at 399; *see Antal's, supra,* 680 A.2d at 1388; *Peterson, supra,* 673 A.2d at 667; *Bewley v. Miller,* 341 A.2d 428, 430–31 (D.C.1975); *Lust v. Miller,* 55 App.D.C. 217, 218, 4 F.2d 293, 294 (1925). Indeed, implicit in our decision in *Peterson, supra,* was the understanding that once the lottery winner's assignment was authenticated and the identification of his assignee verified, the lottery board was required to honor his assignment, even though it was not a party to the original agreement. *See* 673 A.2d at 667–70. Therefore, because

*supra,* 673 A.2d at 670). Appellees' arguments regarding the validity of the assignments were made for the first time on appeal. Since the trial court did not consider those contentions, we shall not address them.

the rights assigned by the heirs clearly do not contemplate performance of unique personal services, the trial court erred in ruling that the assignment agreements do not effect the Estate's disbursements.[11]

Moreover, the trial court's dismissal of Brandenburger's complaint on the ground that it was improperly before the Probate Division was also error. On several occasions, we have addressed the interrelationship among the five divisions of the Superior Court. *See Robinson v. United States,* 769 A.2d 747, 751–52 (D.C. 2001); *Williams v. Dudley Trust Found.,* 675 A.2d 45, 52–54 (D.C.1996); *Clay v. Faison,* 583 A.2d 1388, 1390 (D.C.1990); *Farmer v. Farmer,* 526 A.2d 1365, 1368–69 (D.C.1987); *Poe v. Noble,* 525 A.2d 190, 195 (D.C.1987); *Ali Baba Co. v. WILCO, Inc.,* 482 A.2d 418, 425–26 (D.C.1984); *Andrade v. Jackson,* 401 A.2d 990, 992–94 (D.C.1979). Specifically, we have stated:

> While the Superior Court is separated into a number of divisions, "these functional divisions do not delimit their power as tribunals of the Superior Court with general jurisdiction to adjudicate civil claims and disputes." *This court has long held that there is no jurisdictional bar to one division of the Superior Court entertaining an action more appropriately considered in another division, so long as doing so does not violate the statute or rules of the court and the claim has a rational nexus to a subject matter within the responsibility of that division.*

*Clay, supra,* 583 A.2d at 1389–90 (citation omitted) (emphasis added); *accord Robinson, supra,* 769 A.2d at 751; *Ali Baba,* *supra,* 482 A.2d at 425–26; *Andrade, supra,* 401 A.2d at 992–93. Within this scheme, while "orderly procedures require issues to be decided by the division or branch designated ... with the responsibility for those matters ..... *[d]ismissal of an action is proper only where none of the divisions possesses a statutory basis for the assertion of jurisdiction." Ali Baba, supra,* 482 A.2d at 426 (emphasis added); *accord, Robinson, supra,* 769 A.2d at 751–52 ("A case over which the Superior Court has jurisdiction is not subject to dismissal....").

Because the trial court correctly recognized that at least one division of the Superior Court has jurisdiction to hear Brandenburger's claims,[12] its dismissal, with prejudice, of Brandenburger's complaint was contrary to the legal principles enunciated in *Ali Baba* and was, therefore, erroneous. Furthermore, Brandenburger's allegations implicate a "subject matter within the responsibility" of the Probate Division, namely, disbursements by an estate to an "Interested person." *Clay, supra,* 583 A.2d at 1390; *cf. In re Estate of Glover,* 470 A.2d 743, 750 (D.C.1983) (Probate Division resolves issues that affect determinations of heirs). Accordingly, pursuant to *Clay* and our other cases addressing the functional divisions of the Superior Court, the Probate Division, as a component of the Superior Court, has jurisdiction to preside over this case. *See, e.g., Clay, supra,* 583 A.2d at 1390.

Brandenburger's status as an "Interested person" additionally accords it the right to seek court resolution in the underlying probate proceeding;[13] therefore, the

---

**11.** However, consistent with *Peterson, supra,* we do not foreclose the Estate from examining the authenticity of the assignments or from verifying the identification of the assignees. *See* 673 A.2d at 670; *see also* Super. Ct. Prob. R.120 (indicating assignments must be verified).

**12.** In its ruling, the trial court implied that Brandenburger's claims could be heard in the Civil Division.

**13.** D.C.Code § 20–107, the section of the probate code entitled "Right to seek [c]ourt resolution," provides:

trial court's ruling that this dispute should be resolved by the Civil Division was also error. In *Andrade, supra,* we stated that inter-division transfer is permissible in cases where "the jurisdictional nature of an internal court division bars the requested adjudication and relief." *Andrade, supra,* 401 A.2d at 994; *see Robinson, supra,* 769 A.2d at 752; *Williams, supra,* 675 A.2d at 54. This rule necessarily contemplates situations where the underlying controversy is one ordinarily resolved only in the division *receiving* the transfer rather than the division *making* the transfer. *See Williams, supra,* 675 A.2d at 54; *Andrade, supra,* 401 A.2d at 994. We do not have that circumstance here. Because the instant dispute is fundamentally a probate matter, the Probate Division should determine whether the Estate should (if the assignments are deemed valid) or should not (if the assignments are ruled invalid) disburse funds to Brandenburger.

## IV.

 Finally, the trial court ruled that Brandenburger did not have standing to present proof of Freddie Lewis' heirship. The trial court was of the view that only Freddie Lewis had the right to "prove up her heirship," suggesting that Freddie Lewis' failure to appear at the pretrial conference evinced her intent not to do so. That view ignores the fact that Brandenburger, as a result of its assignment, stands in Freddie Lewis' shoes for the purpose of establishing its own rights and interests in a portion of Freddie Lewis' entitlement. *See* discussion, *supra,* Part III. To the extent, therefore, that Brandenburger attempts to establish that Freddie Lewis is "a person entitled to property of an intestate decedent pursuant to chapter 3 of title 19," we are persuaded it has standing. D.C.Code § 20–101(c). Accordingly, we hold that the trial court's dismissal, without first providing Brandenburger the opportunity to "prove up" Freddie Lewis' heirship, was also error. *Cf. In re Barfield, supra,* 736 A.2d at 996–97 (upholding probate court's dismissal of a complaint for lack of standing because appellant offered little, if any, evidentiary or factual support for his contention that he was an "Interested person" after being given an opportunity to do so).

For the reasons stated, the judgment of the trial court is hereby reversed, and the case is remanded for proceedings consistent with this opinion.

*So ordered.*

(a) An *interested person,* the beneficiary of a trust, or the Register *may, at any time, petition the Court for an order,* following notice to interested persons and with or without a hearing, *to resolve a question or controversy arising in the course of a supervised or unsupervised administration of a decedent's estate.*

(b) Any *interested person* in an unsupervised administration, any unpaid creditor of either the decedent or the estate whose claim is not barred, and the personal representative, *may request Court action or assistance in connection with any specific issue related to the ad-* ministration of the estate. Upon receiving such request, if the Court determines a hearing is necessary, the Court shall notify the personal representative and set a hearing on the matter (unless waived by all interested persons); the personal representative shall certify to the Court that the personal representative has given notice of the hearing to the interested persons, by certified mail or personal delivery at least 10 days prior to the hearing.

(Emphasis added).