Gary WILLIAMS, Appellant,

v.

**DUDLEY TRUST FOUNDATION,**
Appellee.

No. 93–CV–116.

District of Columbia Court of Appeals.

Argued Sept. 20, 1995.
Decided April 18, 1996.

Morton A. Faller, Washington, DC, for appellant.

Lois R. Goodman, Atlanta, GA, for appellee.

Before SCHWELB, KING, and REID, Associate Judges.

REID, Associate Judge:

Appellant Gary Williams entered into an installment land contract to purchase residential property from the Dudley Trust Foundation ("Seller"). When he stopped making the monthly interest payments because of alleged latent defects, the Seller filed a complaint against him for possession. Judgment was entered against him after a bench trial in the Landlord & Tenant Branch of the trial court. On appeal he: (1) challenges the jurisdiction of the Landlord & Tenant branch to adjudicate a counterclaim involving breach of an installment land contract, and a claim for possession of real estate due to non-payment of interest under an installment land contract; (2) asserts that the denial of his request to waive the undertaking (bond requirement) of his plea of title action, and the subsequent striking of his plea of title, violated his right to due process; and (3) complains that he was denied his Seventh Amendment constitutional right to trial by jury. We affirm.

## I.

### FACTUAL SUMMARY

In early 1991, appellant Gary Williams executed an installment land contract for the purchase of residential property located on Macomb Street, Northwest. The Seller was the personal representative of the Estate of Tilford Dudley.[1] Williams agreed to purchase the property for $289,000, with a down payment of $28,900 and a promissory note of

---

1. Tilford Dudley died in January 1991, and his will created the Dudley Trust Foundation, a charitable trust fund which became the owner of the Macomb Street property.

$260,100, payable in full within five years.[2] Monthly interest payments were required. The contract specified that each monthly payment "constitutes interest payments only and does not constitute payment of principal." The same was true for the down payment. Paragraph 16 of the contract explicitly stated that these payments were "in lieu of rent."

Williams agreed to take the property in an "as is" condition, and the Seller made no warranties concerning the property. However, under Paragraph 7 of the contract, the Seller agreed to make certain repairs and improvements, including the replacement of all water supply galvanized pipes with copper pipes, and the installation of a new roof. The Seller was required to provide notice to Williams when the repairs and improvements were finished. Williams then had seven days in which "to notify the Seller of any complaint or defect in the work." Failure to give the requisite notice was deemed a waiver which relieved the Seller of any further liability. The contract further specified that: "[t]he Buyer's only remedy for any dissatisfaction with the work done is the assurance from the Seller that the Seller will enforce Seller's contractual rights with the contractor(s)."

Paragraph 12 of the contract placed sole responsibility for maintenance and repairs on Williams. Under Paragraph 14, Williams was obligated to "maintain sufficient fire and wind insurance to replace the structure in the event of total or partial destruction...." Paragraph 15 provided that if Williams defaulted "on any term of [the] agreement" the seller had the right to terminate the contract and keep "all down payments and all other payments made prior to the default." Furthermore, under Paragraph 18, "at the election of the Seller," Williams was required to "execute a renunciation of any interest he shall have in the property" in the event of his default.

The Seller hired contractors to make the required repairs, and gave Williams due notice when they were completed. Williams did a walk-through of the property, but did not send the Seller any list of complaints or defects within the required seven day period. On March 18, 1991, Williams signed a document stating that the Seller's "preliminary obligations under the contract had been satisfied." Williams alleged that he made his own improvements to the property, and estimated their value at approximately $100,000.

On September 14, 1991, Williams discovered that a galvanized pipe, located under the bathroom flooring, had burst. Sometime in November 1991, Williams notified the Seller that leaking pipes existed in the house. However, he did not ask the Seller to take any action against any of the contractors whom Seller hired to do the repair work. During the week of February 16, 1992, he found wasp nests in the attic ceiling and other signs of water leaks. On February 22 and 25, 1992, a roofer, hired by Williams, uncovered large areas of rotten porous wood under the shingles. He recommended a new roof.

From October 1991 through February 1992, Williams did not make his monthly interest payments. From November 7, 1991 through August 1992, he failed to carry the requisite insurance on the property. On February 4, 1992, Seller filed a form complaint against Williams for possession of real estate. The complaint, which was filed in the Landlord & Tenant Branch of the trial court, alleged that Williams had failed to pay $9,613.08 in rent from October 1, 1991 to February 1992. The Seller sought possession of the property, as well as rent, fees and costs. Williams answered and counterclaimed on March 11, 1992. Based, in essence, on his "discovery" of "latent defects," he sought $26,054 in damages for "breach of contract, negligence, and other wrongful actions." His answer specified that he had entered into a contract with Seller for the purchase of the property.

Sometime in March 1992, the Seller wrote to Williams and requested documentation concerning the problem with the pipes and actions taken by the plumber. The Seller

2. The balloon payment of $260,100 was due at the end of the five-year period. Title was to vest in Williams on April 17, 1996.

also inspected the property on May 20, 1992, and concluded that a new roof had been placed on the property in April 1991 in a workmanlike manner.

## II.

### PROCEDURAL HISTORY

The procedural history of this case is protracted.[3] Williams handled his trial proceedings on a *pro se* basis.[4] At the beginning of the litigation, the Seller filed a motion for a protective order to ensure monthly payments of interest under the agreement. The trial court issued an order on March 11, 1992, which required Williams to pay into the Court Registry the sum of $4,834 by May 5, 1992, and the sum of $2,304.75 on the 5th day of each month thereafter until the end of the case.[5]

### Plea of Title and Request for Waiver of Undertaking

Williams filed three motions that are relevant to his appeal. He filed a plea of title and request for waiver of undertaking on June 8, 1992. Super. Ct. L & T R. 5(c) provides that a defendant may interpose a plea of title but must also file an application for an undertaking or waiver of undertaking. On June 9, 1992, Williams filed several documents, including a notarized financial statement and a separation agreement to support his request for the waiver. A hearing on the waiver request took place on June 10, 1992, and the application for a waiver was denied

on June 11, 1992. Neither the transcript of the hearing, nor the initial order denying the request for a waiver is part of the record on appeal. Williams filed an amended motion for reconsideration, on June 11, 1992. It was denied on June 12, 1992 by Judge Levie who found "no reasons justifying any reconsideration of the June 10 ruling." [6]

On June 16, 1992, Williams filed a motion for extension of time to file undertaking and an amendment to amended motion for extension of time to file an undertaking and motion to accept independent certified appraisal of property in lieu of an undertaking. However, on June 19, 1992, Williams' plea of title was stricken for failure to post a $48,000 bond as the undertaking. Later, during a July 14, 1992, proceeding before Judge Burnett, Williams mentioned that his latest motions regarding the undertaking were still pending. Judge Burnett certified the matter back to Judge Levie for a ruling on the outstanding motions. On July 16, 1992, the Clerk of the Court issued a certificate stating: "the motion for reconsideration is denied, by order of Judge Levie."

### Motion for Certification to the Civil Division

Second, on June 12, 1992, Williams filed a motion to certify the Seller's action against him as well as his counterclaim to the Civil Division under Super.Ct.Civ.R. 40–I and R. 40–II.[7] Williams' motion was based upon his plea of title and his breach of contract counterclaim. Judge Kessler denied the motion

---

3. During the course of a one year period, about six different judges played a role in this litigation.

4. Williams completed law school, but has not been admitted to any bar. He has been a professor of business law and has a consulting business.

5. At the conclusion of the case, the Seller received the sum of $24,881 from the Court Registry. According to Williams' contract, his monthly interest payment during the first year of the contract came to $1,500, and was set at $1,950 for the last four years of the contract.

6. In a footnote to his June 12 denial, Judge Levie stated:
 Subsequent to the [June 10] hearing the Court learned that earlier on June 10 Judge Kotelly

indicated an intention to deny defendant's Motion to Waive due to lack of documentation, but postponed decision on the Motion to allow defendant time to obtain financial documentation. Having permitted additional time to get whatever documentation he desired, Judge Kotelly certified the matter to this Court for decision. Given the fact that defendant apparently is a law school graduate and familiar with controlling the issue of undertakings, as reflected in his citation to the appropriate cases and oral argument referring to the pertinent cases, the Court is hard pressed to credit any assertion of inability to produce necessary documentation.

7. Rule 40–I(a) relates to the assignment of cases and Rule 40–II provides for designation of cases as "Civil I."

on June 19, 1992, after Williams failed to show up for a hearing. In a motion for reconsideration, filed on July 1, 1992, Williams claimed that he did not appear because he thought his case already had been certified to the Civil Division.[8]

During the July 14, 1992 proceeding, Judge Burnett inquired whether the case was properly in the Landlord & Tenant Branch, and whether there had been a ruling on the merits with respect to the issue. Counsel for the Seller replied that Williams was a tenant by sufferance "because he no longer has a right to possession and we're moving to evict him." She further stated that Judge Kessler's ruling denying certification to the Civil Division was on the merits, and if not, the matter should be returned to Judge Kessler. Williams stated that he had an installment land contract and the matter should not be in the Landlord & Tenant Branch. Apparently there was no further consideration of Williams' motion to certify the case to the Civil Actions Branch until the conclusion of the bench trial before Judge Rufus King. The motion was denied on October 6, 1992.

### Demand for a Jury Trial

Williams filed a demand for a jury trial on June 12, 1992, and an amended demand on July 1, 1992. The Seller moved to strike the demand on the ground of late filing.[9] On July 14, 1992, Judge Burnett struck the jury demand. In doing so, he stated:

> "Well, until Judge Levie rules on the reconsideration or the motion on the undertaking and certification, at this point, the jury demand will be stricken, subject to any decision by Judge Levie that the case ought to be in the Civil Actions Branch. If it's certified in the Civil Actions Branch, you can then raise the issue."

### TRIAL COURT RULING ON THE JURISDICTIONAL ISSUE

A bench trial took place on October 6, 1992. At the conclusion of the trial, Judge Rufus King addressed the jurisdictional issue of whether the case should be heard by the Civil Division. He stated that:

> The divisions between the branches of this court are not jurisdictional, but are administrative, and so the remedy for an action brought in the wrong division is [to transfer it] to another division or typically it is done—administratively, a counterclaim is not allowed in this branch.... without prejudice to bringing in another branch even though under the rules it would otherwise be a compulsory counterclaim. In this case, I view the entire matter as before the Court in this matter, i.e. the claim for possession and back interest and other payments under the contract by the plain-

---

**8.** Williams apparently confused the ruling on his request for waiver of undertaking with his motion to certify his action to the Civil Division. In his motion for reconsideration, he said he received a telephone call from an employee of the Landlord & Tenant Branch who informed him that his motion was denied, and on June 13, 1992, he received Judge Levie's order denying his motion for reconsideration. The order contained the following language which Williams interpreted to mean that his case had been certified to the Civil Division: " 'Having permitted defendant additional time to get whatever documentation he desired, Judge Kotelly *certified the matter to the Court for decision.*' " (emphasis added). Clearly, Judge Levie referred to the request for waiver of undertaking. Williams apparently did not see the actual language of Judge Levie's order until June 13, the day after he filed his motion to certify the case to the Civil Division.

**9.** Superior Court Landlord & Tenant Rule 6 provides that any party entitled to a jury trial may demand one so long as the demand is made when defendant first answers the summons, or in a time allowed by the court "for good cause shown." In the event of a proper jury trial demand, the case will be transferred to the civil division for an expedited trial. Super.Ct.Civ.R. 38 provides in pertinent part: (a) *Right preserved.* The right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by an applicable statute shall be preserved to the parties inviolate.

(b) *Demand.* Any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue. Such demand may be indorsed upon a pleading of the party....

(d) *Waiver.* The failure of a party to serve a demand as required by this Rule and to file it as required by Rule 5(d) constitutes a waiver by the party of the trial by jury.

tiff, and the claim of setoff or counterclaim for breach of contract.

## III.

### TRIAL COURT RULING ON THE MERITS AND SUBSEQUENT COURT ORDERS

The trial court issued a Memorandum Order in favor of the Seller on January 5, 1993, and ruled that the defects in the property were not latent because Williams "knew the property contained a partially rotted roof and faulty pipes, contracted with plaintiff to have them replaced, and the replacement was subject to his inspection and approval...." Moreover, the trial court found that Williams had not made a reasonable inspection of the property after notice by the Seller that the repairs had been completed. Accordingly, the trial court concluded that Williams' "unreasonable inspection and subsequent acceptance of the property constituted a waiver to any later claim by defendant regarding such defects." On January 15, 1993, the Seller filed a Super.Ct.Civ.R. 59 motion to amend the trial court's judgment. The Seller sought an amendment of the trial court's order to include, *inter alia*, (1) a writ of possession and an order requiring Williams "to renounce any interest he has in the property," (2) a money judgment in the amount of $9,613.08 plus costs, and (3) "an order turning the money in the Court Registry over to" the Seller. A later trial court order, dated February 1, 1993, and docketed on February 5, 1993: (1) granted possession of the property to the Seller; (2) entered judgment for the Seller in the amount of $9,613.08, plus interest and costs; (3) ordered all monies in the Court Registry to be released to the Seller and credited against the money judgment; and (4) ordered Seller to submit an affidavit no later than February 15, 1993, setting forth attorney's fees and costs claimed, and further ordered Williams to file an opposition prior to March 1, 1993.

Williams moved for injunctive relief on February 11, 1993, in an effort to vacate his eviction from the property; however, he was evicted from the property on February 9, 1993. There is no record of any ruling on his motion for injunctive relief.[10] On February 16, 1993, the Seller filed a "motion to alter or amend judgment." The motion in essence requested virtually the same relief as demanded in the Seller's January 15, 1993, motion to alter or amend. The Seller asked that: (1) Williams be given no credit for the sums he paid into the Court Registry; (2) Williams be required to execute a disclaimer of interest in the property; and (3) the time for claiming attorney's fees be enlarged until two weeks after all litigation involving the case had been resolved. The record does not reflect any decision on this motion.

On February 2, 1993, Williams filed suit against the Seller in the civil division of the Superior Court, alleging, *inter alia*, breach of contract. This action was dismissed, without prejudice, on the ground of *res judicata*, pending disposition of Williams' appeal to this court.

Williams filed a notice of appeal on January 21, 1993.

## IV.

### APPELLATE JURISDICTION

■ The record contains no disposition of the Seller's February 16, 1993, motion to alter or amend the judgment, and Williams' February 11, 1993, motion for injunctive relief, both of which were filed after Williams' January 21, 1993, notice of appeal. During oral argument, the parties acknowledged that no decision had been made on either motion.

■ We have long adhered to the rule that any order from which an appeal is taken must represent the final disposition of the case. *See In re C.I.T.*, 369 A.2d 171, 172 (1977) (referencing *Whitman v. Noel*, 53 A.2d 280 (1947); and *Jacobsen v. Jacobsen*, 75 U.S.App.D.C. 223, 126 F.2d 13 (1942)).[11] Ac-

---

10. Since Williams was evicted on February 9, his February 11, motion probably was deemed to be moot.

11. We have previously discussed the factors determining finality. *See District of Columbia v. Tschudin*, 390 A.2d 986, 988 (D.C.1978); and *In re Estate of Chuong*, 623 A.2d 1154, 1157 (D.C. 1993) (en banc).

cordingly, we asked the parties to submit post-argument briefs showing why the appeal should not be dismissed for lack of finality. The Seller submitted a supplemental brief, but Williams did not. The Seller argued that an interlocutory appeal may be heard under D.C.Code § 11–721(a)(2)(C) which provides that: (a) The District of Columbia Court of Appeals has jurisdiction of appeals from— .... (2) interlocutory orders of the Superior Court of the District of Columbia—.... (C) changing or affecting the possession of property.... Interlocutory orders generally are not appealable. *See Jenkins v. Parker*, 428 A.2d 367, 368 (D.C.1981). However, if an order changes the status quo regarding the possession of property, it is appealable. *Id.*, at 369 (referencing *Clark v. District Discount Co.*, 151 A.2d 198, 199 (D.C.1959)); *see also Hagner Management Corp. v. Lawson*, 534 A.2d 343, 345 (D.C.1987); *Dameron v. Capitol House Assocs. Ltd. Partnership*, 431 A.2d 580, 586 (D.C.1981) (referencing *Forgay v. Conrad*, 47 U.S. 201, 6 How. 201, 12 L.Ed. 404 (1848)). When the Seller filed its complaint for possession, Williams clearly was in possession of the property under his installment land contract. The trial court's memorandum order of January 5, 1993, from which Williams noticed an appeal, rendered judgment for plaintiff. Hence, it clearly constituted an order "changing or affecting the possession of property," and may be appealed as an exception to the general rule that interlocutory orders are not appealable.[12] We proceed to consider the issues raised on appeal.

## V.

## ANALYSIS

Williams asserts violations of both procedural and substantive rights. He argues that: (1) the Landlord & Tenant Branch lacked the authority to entertain an action for possession of real estate for non-payment of interest or his counterclaim for breach of contract, and therefore his case should have been transferred to the Civil Division; (2) the denial of his plea of title and request for waiver of undertaking violated his right to due process; and (3) his "latent defects" claim entitled him to a jury trial under the Seventh Amendment to the United States Constitution, and he was denied that right.

The Seller insists that Williams waived his right to plea of title and to trial by jury due to his failure to pay the necessary undertaking fee for his plea of title, and his failure to file a timely jury demand. Moreover, the Seller contends that any equitable ownership interest that Williams possessed in the property automatically became a tenancy by sufferance when he failed to meet the terms of the installment land contract; consequently, the case was properly before the Landlord & Tenant Branch. In the alternative, the Seller argues that Williams waived his right to transfer to the Civil Division when he failed to appear for the hearing on his motion.

## A. Nature of the Real Estate Agreement

█ The agreement for purchase of real estate which Williams executed is a variant of an installment land contract. While the purchaser under such a contract is entitled to immediate possession of the property, title is retained by the seller, usually until the full purchase price has been paid. The purchase price is paid in installments. The purchaser usually assumes responsibility for property upkeep, payment of taxes and insurance. Typically such contracts contain a forfeiture or default provision under which the seller may regain possession of the property and keep all monies paid to the date of default. The purchaser is regarded as the equitable owner of the property. 7 POWELL ON REAL PROPERTY, 1995 ed., ¶ 938.20[1].[13]

---

12. Hence, we need not determine the effect of the Seller's January 15 motion to amend pursuant to Rule 59, or its February 16, 1993, motion to alter or amend (under Rule 59) on Williams' January 21, 1993, notice of appeal. Nor do we need to consider the effect of Williams' February 11, 1993, motion for injunctive relief on the appeal.

13. While these types of contracts avoid some of the hurdles of real estate purchase and financing, they pose a substantial risk to the purchaser who stands to lose his entire investment in the event of default, "except to the extent that his payments considerably exceed the vendor's losses." POWELL, *supra*, at Paragraph 938.20[2]. "Courts are particularly concerned about the harshness of forfeiture because they often see installment

## B. The Trial Court Jurisdictional Issue

■ Williams' installment land contract gave him an equitable ownership interest in and possession of the property. It specifically stated that the down payment and the installment payments constituted "interest" and not "rent." Williams first raised the jurisdictional issue as to whether his case should be heard by the Landlord & Tenant Branch on June 8, 1992, when he filed his plea of title and request for waiver of undertaking. The trial court denied the waiver request. The reasons for the denial of the request are not clear since neither the June 10, 1992, transcript or the initial order denying the request constitute part of the record. Nonetheless, it appears that the denial is traceable to inadequate proof of Williams' inability to pay the undertaking. When Williams failed to pay the $48,000 undertaking fee, his plea of title was stricken on June 19, 1992. His efforts to change the trial court's initial denial of his waiver request proved futile.

Williams also raised the jurisdictional issue on June 12, 1992, in his motion to certify his case to the Civil Division. That motion was denied when he failed to appear for a June 19, 1992 hearing. Although he argued that his failure to appear was due to his belief that the case already had been certified to the Civil Division, a plain reading of the order he cites leaves no doubt that it was addressed to the waiver of the undertaking, not to his motion to certify the case to the Civil Division. His motion for reconsideration of the issue was denied.

The jurisdictional issue surfaced again during the bench trial before Judge Rufus King. In its opening statement at the October 6, 1992 trial, the Seller acknowledged that Williams' Agreement "is not your standard rental contract." In addition, at the end of testimony by the Seller's real estate agent, Williams indicated that he would like to state his case also. The trial judge said: "[T]his is not the forum for trying all of your contract damages issues. The question is has there been a default and are they entitled to possession. That is the first question, and then the other question is whether there is also

entitlement to a money damage award...." The court may have meant, simply, that Williams could not try his counterclaim in the midst of the Seller's case. This is borne out by comments the trial judge made at the conclusion of testimony from all the witnesses. The trial court addressed the authority of the Landlord & Tenant Branch to hear the claim and counterclaim, as follows:

> First of all, the rules which limit landlord/tenant cases to rent and possession are obviously stretched in a case like this in any case because there is a title issue, and the case has been tried as if all the issues are before the Court, and so I view it that way, i.e., both the claim and the counterclaim are before the Court. The divisions between the branches of this court are not jurisdictional, but are administrative, and so the remedy for an action brought in the wrong division is transferred to another division or typically it is done—administratively, a counterclaim is not allowed in this branch with allowance of without prejudice to bringing in a—another branch even though under the rules it would otherwise be a compulsory counterclaim. In this case, I view the entire matter as before the Court in this matter, i.e. the claim for possession and back interest and other payments under the contract by the plaintiff and the claim of setoff or counterclaim for breach of contract.

Williams made no comment or objection at the conclusion of the trial judge's statements. Nor does his post-trial brief, submitted on October 20, 1992, address the issue. Williams' notice of appeal, filed on January 21, 1993, sets forth the following issues to be presented on appeal: "Order is contrary to decision of trial judge, unjust enrichment, and denial of due process under the 14th Amendment of the U.S. Constitution."

We are satisfied that Williams raised the jurisdictional issue below on more than one occasion, and that it is properly before us. We have recognized that this Court may notice a jurisdictional defect at anytime. *Gilles v. Ware,* 615 A.2d 533, 554 (D.C.1992)

contract purchasers as people in special need of protection." *Id.,* at Paragraph 938.20[3].

(Reilly, J., concurring) (citing *Langley v. District of Columbia*, 277 A.2d 101 (D.C.1971) (dissenting in part and concurring in judgment)).

The trial judge regarded "the divisions between the branches" of the Superior Court as administrative and not jurisdictional. In addition, he indicated that the trial court would resolve both the Seller's complaint and Williams' counterclaim. At the time Williams' case arose, the Landlord & Tenant Branch of the trial court had jurisdiction over a controversy where a landlord-tenant relationship existed. *Pollock v. Brown*, 395 A.2d 50, 51 n. 1 (D.C.1978). Superior Court Landlord & Tenant Rule 5(b) limited the type of defenses and counterclaims that could be heard to "recoupment or set-off or a counterclaim for money judgment based on the payment of rent...." Moreover, Super.Ct. L & T R. 5(c) specified that a plea of title must be certified to the Civil Actions Branch trial upon payment of the required undertaking. Superior Court Landlord & Tenant Rule 6 provided that where a jury demand had been duly made, the case had to be certified to the Civil Actions Branch and scheduled for an expedited trial. Under Super.Ct.Civ.R. 3–I, any action "which may affect title to or interests in real property" will be adjudicated in the Civil Actions Branch.

In *Barnes v. Scheve*, 633 A.2d 62, 64 (D.C. 1993), we specifically stated that "the rules governing the landlord & tenant branch narrowly and specifically limit its reach." We reversed the trial court's judgment in that case because it "had no authority to grant the ... relief [requested] beyond awarding the claimed right to possession [where the plea of title was abandoned] ... just as the court would have had no authority to enter-

tain a counterclaim beyond the scope of Landlord & Tenant Branch rules." Moreover, in *Poe v. Noble*, 525 A.2d 190, 195 (D.C.1987), we said that the "general jurisdictional grant" to the Superior Court:

does not mean, however, that each individual division of the Superior Court has power beyond its court rules or its relevant statutory subject matters. Each division is entrusted with a specific responsibility, each must follow the pertinent statutory mandates, and each must transfer inappropriate cases to the proper division.[14]

*Poe* also recognized that: "Where the claim is related to a subject matter within the responsibility of the division, however, that division may rely upon its general equity powers to adjudicate the claim and to award relief." *Id.*

Although the landlord & tenant rules of the trial court did not permit the Landlord & Tenant Branch to hear Williams' counterclaim which was based on breach of an installment land contract and the implied assertion of an equitable, possessory interest in the land,[15] the trial judge sat as a judge of both the Landlord & Tenant, and Civil Action Branches. He stated "[T]he case has been tried as if all issues are before the Court, and so I view it that way, i.e. both the claim and the counterclaim are before the Court."[16]

The Seller argues that the trial judge's action was consistent with *Andrade v. Jackson*, 401 A.2d 990 (D.C.1979). There we observed that "[w]hile the Superior Court by statute has five divisions, Civil, Criminal, Family, Tax, and Probate, ... each division possesses the undivided authority of the Court." 401 A.2d at 993. Nonetheless, we

14. The Superior Court's general jurisdictional powers are set forth in D.C.Code § 11–921.

15. Superior Court Landlord & Tenant Rule 5(b) provides:

*Counterclaims.* In actions in this Branch for recovery of possession of property in which the basis of recovery is nonpayment of rent or in which there is joined a claim for recovery of rent in arrears,the defendant may assert an equitable defense of recoupment or set-off or a counterclaim for a money judgment based on the payment of rent or on expenditures claimed as credits against rent or for equitable

relief related to the premises. No other counterclaims, whether based on personal injury or otherwise, may be filed in this Branch. This exclusion shall be without prejudice to the prosecution of such claims in other Branches of the Court.

16. It is not clear from the October 6, 1992, transcript whether Judge Rufus King was aware, prior to conducting the bench trial, of Williams' earlier jurisdictional motions, and the decisions by other trial judges to deny transfer of the case to the civil branch.

concluded that "orderly procedure requires" that "a task normally assigned to the Probate Division of the Superior Court ... be resolved in the first instance" by that Division. *Id.* We went on to state that: "When the jurisdictional nature of an internal court division bars the requested adjudication and relief, we believe the appropriate remedy would be simply to transfer the case to the appropriate division of the trial court." *Id.* at 994. In *Barnes v. Scheve, supra,* we noted that: "the rules governing the Landlord & Tenant Branch narrowly and specifically limit its reach." 633 A.2d at 64.

We conclude that Williams' case fell clearly within the jurisdiction of the Civil Actions Branch of the trial court, and was properly adjudicated in that branch when the trial judge sat as a Landlord & Tenant Branch judge and as a Civil Actions Branch judge. Both the Landlord & Tenant Branch and the Civil Actions Branch are part of the Civil Division. No other division of the trial court—Criminal, Family, Tax or Probate— had jurisdiction over Williams' complaint. In sum, Williams received the same process to which he would have been entitled had his case been transferred to the Civil Actions Branch. Hence, we reject his challenge to the trial court's jurisdiction to hear his case.

### C. The Plea of Title and the Requirement of an Undertaking

■ Williams argues that the denial of his plea of title and request for waiver of undertaking under Super.Ct. L & T R. 5(c), and the requirement that he post a bond in the amount of $48,000, violated his right to due process because it resulted in the striking of his plea of title and prevented the transfer of his case to the Civil Actions Branch. We disagree.

■ An undertaking "serves as a bond to protect the plaintiff by providing for intervening rent and damages, including assurance that the plaintiff, if successful, will have been compensated for the cloud on the title ... and related damages and costs." *Turner v. Day,* 461 A.2d 697, 699 (D.C.1983). "The

guiding principle for the court is, of course, to arrive at a reasonable monthly payment which will, at one and the same time, impose a fair obligation on the defendant, permit the case to be heard on the merits, and assure the plaintiff that if he wins he will, having been denied interim possession, at least receive reasonable intervening rent." *Thompson v. Mazo,* 137 U.S.App.D.C. 221, 226, 421 F.2d 1156, 1161 (1970). When an application for a waiver of the undertaking is made, "the defendant has the burden of persuading the court that the undertaking should be waived or in any event should be less than the plaintiff reasonably requests." *Turner,* 461 A.2d at 699.

■ We review the denial of a motion to waive an undertaking "for abuse of discretion." *Turner,* 461 A.2d at 699 n. 4. Williams filed his request for waiver of undertaking on June 8, 1992. He appeared before Judge Kotelly on the morning of June 10, 1992, and reportedly was given time to get his documentation together. He appeared before Judge Levie on the same day for a hearing on his motion. Judge Levie denied Williams' request for waiver of the undertaking on June 10, 1992. The day after the hearing, Williams filed an amended motion for reconsideration and attached affidavits regarding his financial status. In its June 12, 1992, order denying the amended motion for reconsideration, the trial court referenced the record of the June 10 hearing, and concluded that "defendant has presented no reasons justifying any reconsideration of the June 10 ruling." Williams' Amendment to Amended Motion for Extension of Time to File an Undertaking and Motion to Accept Independent Certified Appraisal of Property in Lieu of an Undertaking, was regarded as a motion for reconsideration, and was denied on July 16, 1992, by order of Judge Levie.

■ Williams complains that he invested $28,900 in a down payment on the property, had been ordered to pay a monthly sum into the Court Registry to protect the Seller's right to a monthly payment,[17] and had made improvements of his own on the property

---

17. The initial amount ordered to be paid into the court registry was $4,834 and monthly sums

thereafter of $2,304.75. See note 5, *supra.*

which he alleged amounted to approximately $100,000. Therefore, he argues, no undertaking should have been required. Further, he maintains that the undertaking was too high. Williams had the burden of persuading the trial court that the undertaking should be waived. He failed to sustain his burden, and did not pay the required undertaking. His obligation was to pay the undertaking and preserve his objection for appeal. *See Taylor v. First Am. Title Co.,* 477 A.2d 227, 230 (D.C.1984), aff'd, 509 A.2d 96 (1986). Based on the record before us, we are unable to determine whether the trial court abused its discretion in setting the undertaking at $48,000. "A judgment of any trial court is presumed to be valid." To meet his burden, Williams had a "duty to present this court with a record sufficient to show affirmatively that error occurred." *Cobb v. Standard Drug Co., Inc.,* 453 A.2d 110, 111 (D.C.1982). Consequently, we reject his contentions that the denial of his plea of title and request for waiver of undertaking, or the amount of the undertaking violated his right to due process.

**D. The Jury Trial Demand**

■ Williams argues that his constitutional, statutory and common law rights to a jury trial were violated. The Seller maintains that he waived his right to a jury trial.

■ The Seventh Amendment to the United States Constitution provides that: "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." Super.Ct. L & T R. 6 provides that any party entitled to a jury trial may demand one "not later than the time for appearance of the defendant stated in the summons, or such extended time as the Court may allow for good cause shown." Williams answered the Seller's complaint on March 11, 1992, but did not request a jury trial until June 12, 1992. Hence, his request was untimely under Super.Ct. L & T R. 6.

However, Super.Ct.Civ.R. 38(b) provides that: "Any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefore in writing at any time after the commencement of the action and not later

than 10 days after the service of the last pleading directed to such issue...." Had Williams' case been transferred to the Civil Actions Branch, his right to a jury trial would have been governed by R. 38(b). Williams and the Seller disagree as to what constituted the last pleading directed to an issue triable of right by jury. We need not resolve this issue because, even assuming that Williams' jury trial demand was timely under R. 38(b), we would not reverse the trial court's judgment unless his claim is meritorious. In *Johnson v. Fairfax Village Condominium IV Unit Owners Ass'n,* 641 A.2d 495 (D.C.1994), we concluded that appellant was entitled to a jury trial on his counterclaim which sought damages for wrongful foreclosure on his condo unit for failure to pay the condo assessment. We also made it clear, however, that the claim for damages had to be "meritorious." 641 A.2d at 509. *See also Dominique v. Ralph D. Kaiser Co., Inc.,* 479 A.2d 319 (D.C.1984).

■ The major problem confronting Williams is his inability to defeat the Seller's action, or to prevail on the merits of his counterclaim, as a matter of law. He entered into a highly risky installment land contract in which he had a small window of opportunity to inform the Seller of any defects in the Property. Under Paragraph 7 of the Agreement, the Seller made no warranties about the Property and Williams took it in an "as is" condition. The one exception was that the Seller had to replace all water supply galvanized pipes with copper pipes, and to "replace the roof, including replacement of wood framework under the old roof where needed." After the repairs had been completed the Seller had to inform Williams, and Williams had seven days to notify the Seller of any complaint or defect. After the repairs had been completed, Williams did a walk through of the property and did not notify the Seller of any complaints or defects. In fact, the trial court found that "on March 18, 1991, before taking possession of the house, defendant signed a document stating plaintiff's preliminary obligations under the contract had been satisfied." The trial court concluded that Williams did not make a reasonable inspection of the property after no-

tice that the necessary repairs had been made. Williams admitted at trial that he did not have anyone inspect the property after receiving the notice required by Paragraph 7.

 Moreover, even after the galvanized pipes under the bathroom burst in September 1991, Williams did not provide timely notice to the Seller. Williams discovered the burst pipes on September 14, 1991, but the trial court found that he did not notify the Seller until some time in November 1991. Even then, he did not ask the Seller to take any action, or complain about any latent defect that did not fall within the parameters of the Agreement. Williams' recourse under the Agreement was limited to asking the Seller to "enforce the Seller's contractual rights with the contractors" who performed the required work. Williams finally hired a roof inspector in February 1992. On February 22 and 25, 1992, the inspector discovered rotted wood under the shingles. The trial court found that Williams waived any rights he may have had under the Agreement with respect to the defects he found in February 1992. Prior to purchasing the property, Williams was aware of the defects in the pipes and the roof. Furthermore, the trial court concluded, "although [Williams] knew the pipes, and perhaps the remaining rot in the roof, were not readily discoverable by a walk-through, [Williams] did not hire a professional plumber or roofer to conduct an inspection. Had a reasonable inspection been conducted, the defects would have been discovered." The trial court found that "the roof and pipes cannot be classified as latent defects" because Williams "knew the property contained a partially rotted roof and faulty pipes, contracted with plaintiff to have them replaced, and the replacement was subject to his inspection and approval." This was a correct factual and legal conclusion. Our decision in *Phenix–Georgetown v. Chas. H. Tompkins Co.*, 477 A.2d 215 (D.C.1984) recognizes the general rule applicable to a situation in which latent defects have been alleged "[W]here defects in the work of construction of a building are known or readily discoverable by the purchasers of the property, and no complaint about the quality of the work is promptly made by them, their acceptance of the property discharges any right to dam-

ages which they might have had for the defects." 477 A.2d at 222 (quoting *Kandalis v. Paul Pet Constr. Co.*, 210 Md. 319, 323, 123 A.2d 345, 347 (1956) and *Elliott Consolidated School District v. Busboom*, 227 F.Supp. 858, 861 (S.D.Iowa 1964)).

Williams' problem is compounded by the fact that under Paragraph 12 of the Agreement he assumed sole responsibility for maintenance and repairs. In addition, he was required to make monthly installment payments and to maintain insurance. The trial court found that he did not abide by these requirements. Accordingly, under Paragraph 15 of the Agreement, he was in default and the Seller had the right to terminate the Agreement and retain all payments made under the terms of the Agreement. At the election of the Seller, Paragraph 18 of the Agreement required Williams to "execute a renunciation of any interest he shall have in the property." Hence, given the terms of the Agreement and Williams' own inaction, his claim for damages is not "meritorious." Indeed, in this Court, Williams does not squarely raise any issue regarding factual or legal error on the part of the trial judge. Under these circumstances, we must affirm the judgment of the trial court. There was no role for a jury to play in this case. As we said in *Dominique, supra,* "Had this been a jury trial, the court would have been required to enter a directed verdict for appellees." 479 A.2d at 323.

Accordingly, for the reasons stated above, we affirm the judgment of the trial court.

*Affirmed.*