Michelle KING and Luong Le, Appellants,

v.

Fidelia BERINDOAGUE, Clelia Berindoague, and Stacie Courbois, Appellees.

No. 05–CV–879.

District of Columbia Court of Appeals.

Argued May 30, 2006.

Decided July 26, 2007.

---

1. *Panos v. Nefflen,* 205 A.2d 600, 602 (D.C. 1964).

2. *Del Rosario,* 804 A.2d at 294.

3. *Id.*

William B. Schultz, with whom David Reiser, Washington, DC, and Barbara McDowell, Legal Aid Society, were on the brief, for appellants.

Stephen O. Hessler, Washington, DC, for appellees.

Before KRAMER and FISHER, Associate Judges, and SCHWELB,* Senior Judge.

* Judge SCHWELB was an Associate Judge of the court at the time this case was argued. His status changed to Senior Judge on June 24, 2006.

FISHER, Associate Judge:

When a landlord sues a tenant to recover possession of real property, "the Seventh Amendment preserves to either party the right to trial by jury." *Pernell v. Southall Realty,* 416 U.S. 363, 376, 94 S.Ct. 1723, 40 L.Ed.2d 198 (1974). In this case the tenants were denied that right, and we accordingly remand for a new trial.

## I. Factual and Procedural Background

In June 2005 appellees filed a complaint for possession of the second floor apartment at 1471 Park Road, Northwest, explaining that Stacie Courbois, one of the owners of the building, sought possession for her personal use and occupancy. *See* D.C.Code § 42–3505.01(d) (2001). When the case was called on July 21, 2005, counsel for the landlords asserted that "this property is vacant. Ms. King hasn't lived there for months. My clients bought this property in October of '04. Not a penny of rent has ever been paid. And, Stacie Courbois really is going to move in."

Betraying some frustration at the tenants' resistance in these circumstances, and at the prospect of further delay, counsel informed the court that he now was "looking at an answer and a jury demand." The court responded: "I don't have an answer and a jury demand." Student counsel assisting (but not representing) the tenants explained that "Ms. King and Mr. Le would have answers to both complaints to file. . . . There is a jury demand in both cases."[1] However, "[t]he computers are down in the Clerk's office and they won't let us file them." When asked what the answers would say, student counsel explained that the tenants were claiming that the notice to quit had been served in retaliation "for complaints that [the tenants] have made about the property and other activities that they have conducted-within their rights on the property." In addition, "they have an argument against the good faith of this notice to quit."

Skeptical about the tenants' ability to prove that Ms. Courbois did not intend in good faith to occupy the apartment, the court expressed its concern that the request for postponement of the trial was "a bad faith stalling tactic." Testifying under oath, Ms. King voiced several grievances. She complained that the previous owner had sold the building without giving Ms. King, her husband, or the tenants downstairs a "right of first refusal." *See* D.C.Code §§ 42–3404.02(a), 42–3404.08 (2001). She asserted, as well, that the conditions in the apartment were "horrible." "They've made it impossible. They came in and dismantled the entire kitchen. We had no heat all winter. We have no hot water now. There's no cooking. They've taken everything out. The place is filled with dust." When the landlords had not made repairs after "months and months," the tenants "brought some people in to try to get it livable," but the landlords called the police to remove them.

Given the condition of the apartment, Ms. King and her family were then living in Virginia. However, they hoped to return:

> Our children are in D.C. schools, we work in D.C., we want to stay in our neighborhood where my husband grew up, it's a block from my mother-in-law, two blocks from my sister-in-law, it's our neighborhood, it's our community. And, we know the neighborhood's hot right now and everybody's going condo on our block, but we want to stay and live in our building.

---

1. Two complaints had been filed seeking possession of the same unit. One complaint named Ms. King and Mr. Le. The other named unknown occupants/squatters.

Ms. King also claimed that Ms. Courbois did not truly intend to live there. "They want to flip that property."

The trial court opined that the conditions of the apartment were irrelevant in a "notice to quit case." "There's no claim here if Stacie Courbois is moving in.... I don't consider this defense asserted in good faith." A recess was taken to see if Ms. Courbois could reach the courthouse in time to testify that day.

When the case was called again late in the afternoon, Ms. King explained that "we've been trying since this morning to get the answer filed." The court responded: "I'm sorry about the computers but it's a quarter to five and I'm going to determine whether or not I have to continue the case for trial." "[T]he question before the court is whether or not there is a good faith basis to assert a defense of retaliation such that the trial should not be held today and I should give the tenants an opportunity to file an answer, a jury demand, obtain counsel if they choose to and prolong these proceedings indefinitely until a trial on the merits can be held." Furthermore, "the issue in a notice to quit case of this kind is the intent of the landlord[;] if the landlord states that intent and it is convincing to the fact finder, there is no real contrary proof that can be offered."

Ms. Courbois testified that she and her grandmother own the building. She intended to move into the second floor apartment with her son "[a]s soon as it's ready to live in":

It's really convenient for me. My son goes to school three blocks away. My sister comes by every day. I know the person who lives on the third floor. My mother lives not even like 10 blocks

away so it's very convenient for me. My work is right down the street.

On cross-examination Ms. King established that Ms. Courbois had not been inside the second-floor apartment and was not familiar with the condition or management of the building. At the end of her testimony the court granted judgment of possession to the landlords.

## II. Legal Analysis

Appellants suggest that the trial court improperly granted what they characterize as summary judgment for the landlords, although no such motion had been filed. In our view, however, the court was attempting to adhere to "the long-established policy of preserving the summary nature of actions for possession in the Landlord and Tenant Branch of the Superior Court." *Drayton v. Poretsky Mgmt., Inc.,* 462 A.2d 1115, 1118 (D.C.1983). *See Momenian v. Lustine Realty Co., Inc.,* 693 A.2d 1125, 1126 (D.C.1997) ("District of Columbia Superior Court Landlord–Tenant Rule 12 provides a summary procedure to be used in certain suits for possession."); *Harvey v. Etheridge Owners, Inc.,* 522 A.2d 1278, 1279 (D.C.1987) ("Frequently we have approved the use of summary procedures in the Landlord and Tenant court."); *Wahl v. Watkis,* 491 A.2d 477, 479 (D.C.1985) ("This court has approved the long-term policy of preserving the summary nature of possessory actions in the Landlord and Tenant Branch.").

Landlord and Tenant Rule 12 sometimes allows the court to "enter judgment of possession without trial...." *Momenian,* 693 A.2d at 1126.[2] We have explained that this may occur "where, after discussion of the case in open court and exploration by

---

**2.** Super. Ct. L & T R. 12(a) provides, in part, that when a case is called, "the Court will inquire in each instance as to the nature of the claims, the defenses, and any other matters which will serve the ends of justice. In the course of these inquiries the Court shall make an earnest effort to help the parties settle their differences by conciliation."

the court of the existence of possible defenses, the tenant concedes or the court can otherwise satisfy itself that there is no valid defense to the landlord's complaint for possession." *Harvey,* 522 A.2d at 1279. We do not understand the court to have invoked those procedures in this case. The tenants had not conceded that they lacked a valid defense, nor was the court able to rule that the defenses they articulated were invalid as a matter of law. *Cf. Wahl,* 491 A.2d at 479 (tenant was unable, even after conferring with a law student, to articulate any defense).

Instead, the court resolved the factual and legal issues. It heard testimony from Ms. King, one of the tenants, who explained their complaints about the condition of the apartment and about the former owner of the building. The court also heard from Ms. Courbois, one of the new owners of the four-unit building, who asserted that she intended to move into the apartment formerly occupied by appellants. The court explained that Ms. Courbois, who had taken an oath "to tell the truth and look[ed] me in the eye," had testified "clearly and convincingly" that she intended to move into the apartment. Skeptical that a valid claim of retaliation had been raised, the court nevertheless concluded that "were there one ... it would be rebutted by clear and convincing evidence." At the end of the proceeding, the court granted judgment of possession to the landlords. "Any answer that's been

filed does not persuade me that the trial should be postponed for any reason." [3]

There are many valid reasons for resolving actions for possession as expeditiously as possible. However, "[w]ith the advent of affirmative defenses and the right to trial by jury, landlord and tenant proceedings for possession are no longer as summary in nature as they previously had been." *Cunningham v. Phoenix Mgmt., Inc.,* 540 A.2d 1099, 1101 (D.C.1988). In this case the tenants had asserted a right to a jury trial, and we now must decide whether they were entitled to one.

"A tenant is constitutionally entitled to a jury trial in defending a landlord's action for possession." *Habib v. Thurston,* 517 A.2d 1, 20 (D.C.1985) (citing *Pernell v. Southall Realty,* 416 U.S. 363, 94 S.Ct. 1723, 40 L.Ed.2d 198 (1974)). However, that right must be asserted in a timely manner and in proper form. "It has been universally recognized ... that the right to a jury trial may be waived. The waiver need not be knowing and intelligent in order to be effective; the right may be waived by the mere failure to comply with reasonable rules, even if that failure is unintentional." *Dominique v. Ralph D. Kaiser Co., Inc.,* 479 A.2d 319, 322 (D.C.1984) (internal quotation marks omitted). Super. Ct. L & T R. 6 requires the demand to be in writing, "signed by the party or his attorney of record," and accompanied by a verified answer.[4]

3. Although it is, of course, not conclusive, the docket entry for July 21 states, in part: "Trial Heard and Held in Full. Deft request for Jury Trial—Denied @ 5:02 pm."

4. Landlord and Tenant Rule 6 provides:
Any party entitled to a jury trial may demand a trial by jury of any action brought in this Branch by filing a demand for such jury trial signed by the party or his attorney of record. The demand must be filed not later than the time for appearance

of the defendant stated in the summons, or such extended time as the Court may allow for good cause shown, and must be accompanied by (1) the fee provided in SCR Civil 202, unless the Court has authorized the party to proceed without payment or prepayment of costs, and (2) a verified answer setting out the facts upon which the defense is based, if the jury demand is made by the defendant. If a trial by jury is properly demanded, the case will be certified to the

■ Appellees do not contest the timeliness of the jury demand in this case. However, they vigorously assert that the demand was ineffective because it had not been made in proper form. Numerous decisions hold that an oral demand for a jury trial is not sufficient. *See, e.g., In re Latimer,* 918 F.2d 136, 137 (10th Cir.1990); *McCray v. Burrell,* 516 F.2d 357, 371 (4th Cir.1975) (en banc). *See also* 9 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2318, at 133–34 (1995) ("an ... oral demand is insufficient to secure a jury trial"); 8 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 38.50[4][a], at 228 (3rd ed. 2006) ("An oral demand is ineffective.") (all construing Fed.R.Civ.P. 38(b)). The outcome of this case turns on whether we treat the written demand for a jury trial described in open court as having been filed despite the unwillingness of the clerk's office to accept it.

Neither side in this litigation has provided much assistance in clarifying the adequacy of the answer and jury demand that appellants said they were attempting to file. Appellants did not proffer that document for the record, and it is not a part of the record on appeal. Although the trial court explained that it did not have a copy of the answer and jury demand, it appears that neither appellants nor their student counsel showed the document to the court. Counsel for appellees now suggests that the document was defective in both form and content. He asserts that the copy served upon him had not been signed or verified and that the conclusory statements in the answer did not adequately "set[ ] out the facts upon which the defense is based...." Super. Ct. L & T R. 6. However, he made no such objections to the trial court and he, likewise, failed to proffer the document for the record.

We conclude, nevertheless, that the existing record is sufficient. Even though the computers were "down," everyone was aware that the tenants were demanding a trial by jury. Appellants asserted that they had put their demand in writing, and counsel for appellees acknowledged that he had a copy of that document. Counsel did not object at that time that the document was defective in any way, and the court did not make any such findings. Appellants certainly cannot be held responsible for the inoperable state of the computers in the clerk's office. They might well have asked permission to file their answer with the court, *see* Super. Ct. Civ. R. 5(e), but this oversight is of little moment when the constitutional right to a jury trial is at stake. Under these unique circumstances, we deem the appellants to have filed their written demand for a jury trial on July 21, the date of the hearing. The trial court therefore erred in denying a jury trial.

■ We have held that the denial of a trial by jury may be harmless error, but this can be true only in very limited circumstances—where the trial court would have been obliged to take the case away from the jury. *See Williams v. Dudley Trust Foundation,* 675 A.2d 45, 56 (D.C. 1996) (even assuming jury trial demand was timely, reversal would not be required; "There was no role for a jury to play in this case."); *Dominique v. Kaiser Co., Inc.,* 479 A.2d at 323 ("[I]t would have been error to send this case to a jury.... Had this been a jury trial, the court would have been required to enter a directed verdict for appellees."). "Judgment as a matter of law is proper only if the evidence is so clear that a reasonable jury could fairly come to but one conclusion." *National R.R. Passenger Corp. v. McDavitt,* 804 A.2d 275, 280 (D.C.2002). This is not

Civil Division and scheduled for trial on an expedited basis.

such a case. To be sure, the trial court clearly rejected the tenants' defenses, but it did so by assessing credibility and acting as the finder of fact. In ruling on a motion for judgment as a matter of law (formerly a directed verdict), however, "[t]he court must take care to avoid weighing the evidence, passing on the credibility of witnesses or substituting its judgment for that of the jury." *Id.* (internal quotation marks and citation omitted). Similarly, conducting a non-jury trial is not a permissible method by which the court may "satisfy itself that there is no valid defense," *Harvey,* 522 A.2d at 1279, to be tried by a jury.

We recognize that appellees were eager to gain possession of this apartment and that scheduling a jury trial would have caused delay. However, some delay must be tolerated if the right to a jury trial is to be honored. For the reasons stated, we reverse the judgment of the Superior Court and remand for further proceedings consistent with this opinion.

*So ordered.*